UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAYNA T. BONFIGLIO** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-4739** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY** | **SECTION "C" (4)** |

## REPORT AND RECOMMENDATION

This is an action brought pursuant to **Title 42 U.S.C. § 405(g)** for judicial review of a final decision of the Commissioner of Social Security denying Dayna Bonfiglio's claim for Disability Insurance Benefits under the Social Security Act. The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations.

I.     **Background**

Dayna Bonfiglio ("Bonfiglio") filed a request for Disability Insurance Benefits on August 17, 2010 and Supplemental Security Income alleging that she has been disabled since April 1, 2008. She contends that she is disabled as a result of degenerative conditions of her back, diabetes, high blood pressure, chronic fatigue, fibromyalgia, memory problems, depression and bulging disc.[1] Bonfiglio is a 5'4" woman that weighs 222 pounds and is thirty-nine-years and nine months old,

---

[1] R. Doc. 9-3, Tr. 52.

with two years of college education.² She has worked as a front desk manager at a hotel and a manager and supervisor in training for a financial services business.³

Bonfiglio challenges the Administrative Law Judge's ("ALJ") determination that she was not disabled because (1) the ALJ improperly found that the claimant's use of her left upper extremity is unrestricted, which is not supported by substantial evidence; (2) the ALJ erred when he found that Bonfigilio could resume past work where the vocational expert failed to testify about other jobs available such that his opinion is not based upon substantial evidence that she can resume past work.⁴

## II.    **Procedural History**

On August 17, 2010, Bofiglio filed an application for disability determination, which was denied on December 30, 2010.⁵ The Social Security Administration concluded that her conditions were not disabling even though she had diabetes, depression, chronic fatigue, high blood pressure, memory problems, fibromyalgia, degenerative disc disease and bulging discs.⁶ She requested an administrative hearing on February 8, 2011.⁷

---

² R. Doc. 9-6, Tr. 144.

³ *Id.*, Tr. 145.

⁴ R. Doc. 16, p. 1.

⁵ R. Doc. 9-4, Tr. 70.

⁶ *Id.*

⁷ *Id.*, Tr. 76.

On October 6, 2011, a hearing took place before Administrative Law Judge Christopher H. Juge.[8] During the administrative hearing, Bonfiglio testified that she last work in 2007 in consumer financial loans.[9] She testified that she is unable to work due to several ruptured or herniated disc including degenerative disc disease and a cyst-like tumor in the right lobe of her brain.[10] She further testified that from a functional point she can hardly sit for more than 15 minutes and would then have to get up to move around.[11]

She testified that she has been prescribed anti-inflammatory drugs including Lortab and Soma.[12] She also testified further that her neck is a disaster which was the result of an auto accident that she had some fifteen years earlier.[13] As a result of the neck pain she experiences pain radiating into her left arm which makes it impossible for her to open the lid of a jar and turn the door knob.[14] She testified that Dr. Bocatrie had recommended that she participate in physical therapy and that he also recommended that she try an Epidural.[15]

She also testified that she experiences blackouts and headaches as a result of the cyst in her brain.[16] She testified that Dr. Bocatrie recommended that she have the cyst removed and that to do

---

[8] R. Doc. 9-2, Tr. 30-50.

[9] *Id.*, Tr. 34.

[10] *Id.*, Tr. 35.

[11] *Id.*, Tr. 36.

[12] *Id.*, Tr. 40.

[13] *Id.*, Tr. 38.

[14] *Id.*, Tr. 39.

[15] *Id.*, Tr. 40.

[16] *Id.*, Tr. 41-42.

3

so she should seek out a neurosurgeon.[17] She also testified that she has suffered with depression for fifteen years and panic attacks when driving her vehicle.[18]

On November 23, 2011, the ALJ found that Bonfiglio met the insured status requirements of the Social Security Act through December 31, 2013.[19] The ALJ found that Bonfiglio has not engaged in substantial gainful activity since April 1, 2008.[20] The ALJ further found that Bonfiglio had the following severe impairments: degenerative disc disease and obesity.[21] The ALJ further found that Bonfiglio does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments.[22]

The ALJ further found that Bonfiglio has the residual functional capacity to perform the full range of light work. In making this finding, the ALJ noted that he considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.[23] The ALJ further found that Bonfiglio could perform past relevant work as a front desk manager, collections clerk and as a financial manager.[24] The ALJ

---

[17] *Id.*, Tr. 42.

[18] *Id.*, Tr. 44-45.

[19] *Id.*, Tr. 16.

[20] *Id.*, Finding 2, Tr. 16.

[21] *Id.*, Finding 3, Tr. 19.

[22] *Id.*, Finding 4, Tr. 20.

[23] *Id.*, Finding 5, Tr. 20.

[24] *Id.*, Finding 6, Tr. 24.

4

further held that Bonfiglio has not been under a disability as defined by the Social Security Act, from April 1, 2008 through the date of the decision.[25]

## III. Issues

The issues presented for review are:

1. Whether the ALJ's opinion that Bonfiglio had unrestricted use of her left upper extremity is based upon substantial evidence;

2. Whether the ALJ's finding that Bonfiglio could perform her past relevant work is based upon substantial evidence.

## IV. Standard of Review

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is to determine whether there is substantial evidence in the record to support the determination of the fact finder. The Court may not re-weigh the evidence, try issues *de novo* or substitute its judgment for that of the secretary. *Allen v. Schweitker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389 (1971); *see also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981) (citations omitted).

Substantial evidence is more than a scintilla and less than a preponderance, and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *See Richardson*, 402 U.S. at 401. It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "contrary medical evidence." *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

---

[25] *Id.*, Finding 7, Tr. 24.

The concept of disability is defined in the Social Security Act as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a constructive period of not less than twelve months." *See* 42 U.S.C. §§ 416(i)(1), 423 (d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as meaning "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Commissioner applies a five-step sequential evaluation process. The rules governing the steps of this evaluation process are: (1) a claimant who is working and engaging in a substantial gainful activity will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at step five. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

## V. Analysis

### A. Is the ALJ's determination that Bonfiglio had unrestricted use of her left upper extremity based upon substantial evidence?

Bonfiglio contends that the ALJ erred when he concluded that she had unrestricted use of her left upper extremity.[26] She contends that the ALJ should have but did not include the limitation of her left upper extremity, as testified to by the plaintiff, in the residual functional capacity assessment.[27] She further suggests that the ALJ impermissibly relied on his own medical opinion.[28] She therefore contends that the ALJ's decision is not based upon substantial evidence.[29]

The Commissioner contends that the plaintiff had no functional limitations in her upper extremities according to the evidence. The Commissioner further contends that Bonfigilio did not present any medical evidence in support of her claim.

The ALJ noted in the opinion that Dr. Troy Beaucoudray, a neurologist, found that she reported chronic neck pain.[30] An Electromyography (EMG)/nerve conduction study showed left mid cervical radiculopathy of the upper extremities.[31] Dr. Beaucoudray on physical examination noted

---

[26] R. Doc. 16, p. 7.

[27] *Id.* at 6.

[28] *Id.* at 7.

[29] *Id.*

[30] R. Doc. 9-2, Tr. 22.

[31] *Id.*

tenderness to palpation of the cervical bilaterally with a 5/5 in motor strength to bilateral upper extremities.[32] He further noted that her cervical range was within normal limits.[33]

The record confirms that the ALJ concluded that the residual functional capacity assessment performed by the agency adjudicator, a non-examining witness, is not medical evidence.[34] He further held that the claimant's allegations that she is incapable of all work activity to not be credible because the examination findings and treatment notes do not support a more restrictive residual functional capacity assessment.[35]

In reaching the conclusion, the ALJ noted that the consultative examiner assigned no limitations to her. According to the opinion, the ALJ gave her the benefit of the doubt in one instance and found that her allegations that she could perform a reduce ranged of light work credible, but he concluded that her allegations that she was not capable of performing **all** work activity not credible.[36] In so doing, he noted that her daily activities were fairly active. He further noted that her activities also included caring for others, maintaining a household and navigating the stairs in her home.[37]

In reviewing the record, the Court found Bonfiglio reported in a functional report that she could fold laundry, load the dishwasher, clean cabinets, and prepare foods such as sandwiches,

---

[32] *Id.*

[33] *Id.*

[34] *Id.*, Tr. 23.

[35] *Id.*

[36] *Id.*

[37] *Id.*

8

soups, hamburgers, salads and Jell-o.[38] According to the record, she also reported that her hobbies included "floral arranging." Each of the activities would clearly require the usage of her left upper extremity. After considering the evidence, the Court finds that the ALJ's decision is based upon substantial evidence because in order to engage in the activities Bongfiglio admitted to doing, she would have had to use her left upper extremity. There is no medical evidence suggesting otherwise.

> **B.** **Whether substantial evidence supports the ALJs finding that Bonfiglio could perform her past relevant work where the vocational expert failed to demonstrate the other jobs that Bonfiglio could perform.**

Bonfiglio contends that the ALJ erred when he concluded that she could perform her past relevant work and that it is the Commissioner's burden at the final step of the evaluation process to show the jobs that she can perform.[39] She contends that the ALJ should have required the Vocational Expert, who was present during the hearing but who did not testify, to render an opinion about the other jobs the claimant could perform.[40] Bonfiglio further contends that without vocational expert testimony addressing the claimant's non exertional limitations, the agency failed to meet its burden and remand for further proceedings is appropriate.[41]

The Commissioner contends that substantial evidence supports the ALJ's determination that Bonfiglio can return to her past work as a front desk manager, collections clerk and as a financial manager.[42] The Commissioner contends that while the plaintiff claimed that she was not able to work

---

[38] R. Doc. 9-6, Tr. 162.

[39] R. Doc. 16, p. 8.

[40] *Id.* at 9.

[41] *Id.* (citing to *Bowling v. Shalala,* 36 F.3d 431, 434 ( 5th Cir. 1994)).

[42] R. Doc. 17, p. 6 (citing R. Doc. 9-2, Tr. 24).

because it required use of her hands, the medical evidence did not support the existence of functional limitations in either her arms or hands.[43]

The Commissioner contends that in determining that the plaintiff can perform her two other past jobs, the ALJ relied upon Bonfiglio's application for benefits, which indicated that the jobs did not require constant use of her left arm.[44] As a result, the Commissioner contends that the ALJ properly relied upon the form in finding that the plaintiff could return to her past work as she described it.[45]

The record shows that Mary Kelly the Vocational Expert ("VE") was present during the hearing but provided no testimony.[46] However, contrary to the suggestion of Bonfiglio, the ALJ was not required to consult a VE to determine her residual capacity, which involves a determination of the physical and mental demands of jobs a claimant has performed in the past. In this regard, the claimant is the "primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexterional demands for such work." *Dodds v. Commissioner of Social Security* 2002 U.S. Dist. LEXIS 14901, at *9, 2002 WL 1880754, at *3 ( E.D. Mich. June 30, 2002). Further the determination of whether the claimant could perform other jobs is only relevant when a determination has been made that the claimant could not return to her past relevant work. *See also Villa v. Sullivan,* 895 F.2d 1019, 1023 (5th Cir. 1990).

---

[43] *Id.*

[44] *Id.*

[45] *Id.* (citing to *Villa v. Sullivan,* 895 F.2d 1019 ( 5th Cir. 1990) (holding that a step four determination may rest on descriptions of past work as actually performed or as generally performed in the national economy)).

[46] R. Doc. 9-2, Tr. 16.

10

The record shows that the ALJ conducted an extensive review of the medical records and concluded that Bonfiglio was not disabled. In so doing the ALJ found that Bonfiglio was capable of performing past relevant work as a front desk manager, collections clerk, and financial manager.[47] The ALJ held that this work does not require the performance of work related activities precluded by the claimant's residual functional capacity.[48] The ALJ noted that the claimant's assistant manager jobs were certainly performed at light duty or below and possibly as sedentary duty.[49] The ALJ further noted that even at the sedentary level, the Medical-Vocational rules required a finding of not disabled.[50] He credited little weight to Dr. Ray's assessment that she experienced mild limitations in concentration persistence and pace.[51] Instead he accorded considerable weight to Dr. Durdin's opinion, which he found to be consistent with the medical evidence.

The record further shows that during the hearing Bonfiglio testified that she could only sit for 15 minutes, that she would have to get up and walk around and then sit again.[52] She confirmed that Dr. Bocatrie placed her on pain medication and that he also discussed the prospect of epidural shots, and referred her to a nuerosurgeon.[53] Additionally she testified that she experiences panic attacks daily but she is able to help her husband with the house cleaning including folding clothes

---

[47] *Id.*, Tr. 24.

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*, Tr. 36.

[53] *Id.*, Tr. 38-40.

and putting up the dishes after her mother hand washes them.[54] She testified she was able to drive her son to school, and sit and talk with her grandmother.[55] She testified that she rests for up to four hours during an eight hour period.[56] The ALJ considered her testimony and found that it was not completely credible.[57]

The ALJ also considered the Functional Report completed by Bonfiglio where she indicated that she does laundry, prepares meals and cares for a pet.[58] She indicated further that she has light cleaning, washes dishes, drives and shops for groceries, other necessities, attends church, visit her son's school and her family regularly.[59]

The ALJ confirmed that the medical records show that she suffers with degenerative disc disease of both the cervical and lumbar spine.[60] He noted that she complained of the pain being worst in her neck.[61] He indicated however that her most recent examination showed that her cervical range of motion was within normal limits.[62]

---

[54] *Id.*, Tr. 45.

[55] *Id.*, Tr. 46.

[56] *Id.*

[57] *Id.*, Tr. 23.

[58] *Id.*, Tr. 22.

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.*

The ALJ found that her subjective complaints outweighed the objective findings.[63] He also found that her testimony was credible to the degree that she indicated that she could perform a reduce range of light work with restrictions secondary to positive degenerative disc disease and obesity.[64] The ALJ further afforded considerable weight to Dr. Durdin's opinion that she had mild to moderate anxiety disorder and dependent personality traits.[65]

Having considered the ALJ's findings, the testimony of record and the law, the undersigned finds that the ALJ's decision at Step 4 that Bonfiglio could perform her past relevant work is based upon substantial evidence such that the ALJ was not required to obtain the testimony of a vocational expert, pursuant to Step 5 to determine whether other jobs were available. Consequently, the ALJ's decision should be affirmed.

## VI. Recommendation

For the reasons assigned herein, it is **RECOMMENDED** that the ALJ's decision denying Dayna T. Bonfiglio Disability Insurance Benefits and Supplemental Security Income be **AFFIRMED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

---

[63] *Id.*, Tr. 23.

[64] *Id.*

[65] *Id.*, Tr. 24.

a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).[66]

New Orleans, Louisiana, this 15th day of September, 2014.

                                      **KAREN WELLS ROBY**
                              **UNITED STATES MAGISTRATE JUDGE**

---

[66]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.